# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ZACHERIA DANIEL HAWKINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-14-63-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Zacheria Daniel Hawkins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 13, 1976, and was thirty-six years old at the time of the administrative hearing (Tr. 26). He attended high school through the tenth grade while attending special education classes, completed his GED, and has worked as a plumbing apprentice and an electrician apprentice (Tr. 19, 26, 170). He alleges inability to work since December 31, 2006, due to left foot numbness, pain in his left leg, numbness in the right foot, back spasms, public anxieties, and back pain (Tr. 170, 209).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 11, 2011. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 7, 2013 (Tr. 11-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found

that the claimant had the ability to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, that he could lift and carry up to ten pounds occasionally and ten pounds frequently, sit/walk for two hours in an eight-hour workday, sit up to six hours in an eight-hour workday, and further had the ability to sit/stand at the workstation to relieve pain without a loss of productivity. He further limited the claimant to occasional pushing/pulling with upper and lower extremities, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolding. He found the claimant could frequently balance; only occasionally stoop, kneel, or crouch; and could never crawl; but that he had no manipulative, visual, or communicative limitations. Additionally, the ALJ found that the claimant could not work at unprotected heights, around dangerous moving equipment or machinery, or on uneven unstable surfaces. As to the claimant's psychologically based limitations, the ALJ found that the claimant could understand, remember, comprehend, and carry out simple instructions; he could work with coworkers and supervisors on a superficial work basis; he could not work with the general public, and he could adapt to routine changes in the work setting (Tr. 14). The ALJ therefore concluded that the claimant could not return to his past relevant work, but he was nevertheless not disabled because there was work he could perform, *i. e.*, tube operator, document preparer, and addresser (Tr. 20).

## Review

The claimant contends that the ALJ erred in evaluating his mental impairments. More specifically, he asserts that the ALJ ignored evidence from his mental health

-4-

treatment provider that was submitted after the hearing but prior to the issuance of his decision, and that the Appeals Council's review of this evidence did not make this error harmless. The undersigned Magistrate Judge agrees that the ALJ did not properly assess the claimant's RFC with regard to his mental impairment, and the decision of the Commissioner should be reversed.

The ALJ found the claimant's severe impairments were depression, anxiety, degenerative disc disease, degenerative joint disease, chronic pain syndrome, substance abuse, and hypertension, and that he had the additional nonsevere impairment of mitral regurgitation (Tr. 12-13). The evidence related to the claimant's mental impairment reflects that the claimant was regularly noted by his treating physicians and emergency department medical records to have chronic anxiety and panic attacks, and was prescribed medications (Tr., *e. g.*, 303, 333, 340, 394, 400, 401, 418, 427, 431, 453, 477, 550, 552, 702, 704, 708, 769, 962, 974, 988, 996, 1022, 1068). The claimant was referred for intake at Mental Health Services of Southern Oklahoma on October 5, 2007, and assessed with panic disorder and post-traumatic stress disorder (PTSD) along with a global assessment of functioning (GAF) score of 51 (Tr. 795). On April 3, 2009, the claimant returned to MHSSO to begin treatment and went through intake, but never returned (Tr. 779). At intake, he was assessed with PTSD and a GAF of 50 (Tr. 780).

On November 3, 2011, Dr. Patrick Turnock, Ph.D., conducted a mental status examination of the claimant. He took the claimant's history and then assessed the claimant's mental status, noting, *inter alia*, that the claimant was clean and appeared to

have adequate hygiene, he admitted to olfactory hallucinations, his affect was restricted but mood was normal, and his IQ appeared to be above 80 (Tr. 575-576). He further noted that the claimant's long-term memory appeared to be impaired but short-term memory and concentration were intact, his judgment and insight were good, and his impulse control was fair (Tr. 576). Dr. Turnock provided no Axis 1 diagnosis, but stated in this recommendations that the claimant:

> suffers from a thought and perception disorder that impairs his judgment and ability to recognize reality. He is disabled to the point that he is unable to care for himself so that his health and/or safety is endangered. He has repeated episodes of decompensation. His overall adjustment to stress is poor. He is currently being treated by his physician. His prognosis is poor and the duration is unknown secondary to his chronic pain. No additional testing or evaluation is recommended. If he were awarded benefits, he is not able to manage his own funds.

(Tr. 577).

One month later, a state reviewing physician found that, from December 31, 2006 through March 31, 2008, there was insufficient evidence of a medically determinable mental impairment, noting that there "is evidence to suggest that clmt has dx related to anxiety, but insufficient evidence to related [sic] to ADLS and overall functioning (Tr. 588-600). She then determined that from August 11, 2011 through December 12, 2011 (the date of the review), the claimant's anxiety was a nonsevere mental impairment and caused only mild limitations (Tr. 607-613). In support, she summarized many of the positive findings from Dr. Turnock's exam as well as his lack of diagnosis, but did not mention the recommendations (Tr. 614).

On May 18, 2012, state reviewing physician Dan M. Cox, Ph.D., completed a psychiatric review technique, finding that the claimant's anxiety was not a severe impairment and that he had only mild limitations in the areas of functioning (Tr. 622-632). Dr. Cox noted Dr. Turnock's consultative examination, including an IQ estimated greater than 80, impaired long term memory, short term memory and concentration intact, good judgment and insight, and no diagnosis, but did not mention Dr. Turnock's recommendations (Tr. 634).

The claimant was hospitalized following a suicide attempt on May 29, 2013, after he called his mother to say goodbye (Tr. 1108-1119). The claimant presented to Mental Health Services of Southern Oklahoma (MHSSO) in June 2013 following his suicide attempt and began treatment. He was diagnosed with bipolar I disorder, most recent episode (or current) depressed-severe, specified as with psychotic disorder, as well as PTSD, and assigned a GAF of 42 (Tr. 1214, 1218). Notes from July 29, 2013 stated that his prognosis was fair "because he seems to have difficulty leaving his house" (Tr. 1216).

At the administrative hearing held on September 3, 2013, the claimant's representative asked the ALJ to hold the record open because he was waiting for a mental RFC assessment from the claimant's mental health counselor at MHSSO, and the ALJ agreed to hold the record open for twenty days (Tr. 25, 57). Attached to his Opening Brief, the claimant included what appears to be a Fax Transmission Log Sheet indicating that on September 13, 2013 (ten days later), his mental RFC assessment by Wadonna Wells was faxed to the ALJ. *See* Docket No. 16, Ex. 1. On August 30, 2013, Wadonna

Wells, MS LADC, completed a mental RFC assessment form, indicating that the claimant was moderately limited in ten areas: the ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others (Tr. 1257-1261). She further indicated that the claimant had marked limitations in three areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 1257-1261). She summarized the claimant's reports of his impairments, then stated, "I do not believe Zacheria would be able to maintain any meaningful employment at this time" (Tr. 1261).

In his written opinion, the ALJ summarized the claimant's testimony and most of the medical records. The ALJ summarized Dr. Turnock's opinion, noting that Dr. Turnock made no Axis I or Axis II diagnoses but had stated that the claimant suffered from a thought and perception disorder, had repeated episodes of decompensation, and

his overall adjustment to stress was poor (Tr. 15-16). He also summarized Dr. Cox's reviewing opinion, specifically acknowledging a denial of auditory and visual hallucinations, but ignoring the report of olfactory hallucinations in Dr. Turnock's report. (Tr. 16-17). Additionally, the ALJ made no mention of the claimant's MHSSO records or of Ms. Wells's mental RFC assessment (Tr. 1204-1235), but he *did* summarize a medical record that has since been removed because it pertained to a different claimant (Tr. 17, 1120-1140).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th

Cir. 2001). Here, the ALJ faithfully summarized those parts of the record that reflected the claimant had normal findings or good results, but did not properly address Dr. Turnock's opinion as to the claimant's poor prognosis, nor any of the repeated mentions to the claimant's very poor reaction to stress. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission here because these limitations discussed directly impact the claimant's ability to perform work. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination of severe mental impairments at step two, *i. e.*, the severity of these impairments, and compounded this error by discounting the claimant's credibility because Dr. Cox found he did not even have a severe mental impairment[2] (Tr. 19). In any event, it was clearly error for the ALJ to implicitly reject Dr. Turnock's opinion without explaining why. *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate every medical opinion in the record[.]"). *See also Martinez v. Astrue*, 422 Fed. Appx. 719, 725 (10th Cir. 2011) ("To be sure, the ALJ may have had his reasons for giving

---

[2] Indeed, the ALJ lists this reason twice in his enumerated reasons for rejecting the claimant's credibility.

portions of Dr. LaGrand's opinion 'great weight,' but then disregarding other, probative portions of her opinion. However, before doing so, the ALJ was required to discuss why he ignored this evidence.") [internal citations omitted]. Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

The claimant's argument is further supported by the ALJ's failure to consider Ms. Wells's opinion. Even assuming *arguendo* that somehow the ALJ did not receive this evidence prior to issuing his decision, the Appeals Council was required to properly consider this evidence if it was: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision," *see Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995), but failed to do so here. Evidence is new if it "is not duplicative or cumulative," and Ms. Wells's opinion qualifies as such. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case."

*Id. See also Lawson v. Chater*, 83 F.3d 432 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). Here, Ms. Wells's opinion suggests the claimant has impairments discounted or completely unaccounted for in the claimant's RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

Accordingly, the decision of the Commissioner is not supported by substantial evidence because the ALJ did not perform a proper analysis of newly-submitted "other source" evidence, and further failed to properly evaluate the treating and consultative opinions contained in the record. As such, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**